## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN LITTLE, | ) | 3:21-CV-1029 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| *Defendant*. | ) | August 25, 2023 |

### RULING ON MOTION FOR SUMMARY JUDGMENT

In this negligence action, Plaintiff Karen Little brings a claim under the Federal Tort Claims Act ("FTCA") against the United States Government, alleging that the United States is liable for injuries she sustained when she slipped and fell on ice on the landing of a stairway of the United States Post Office in Clinton, Connecticut, in March of 2018.  Defendant has moved for summary judgment, arguing there is no evidence that the United States Postal Service was on notice as to any ice hazard.

For the following reasons, Defendant's motion for summary judgment is GRANTED.

### I.      FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise noted.[1]  The United States Postal Service runs the Clinton Post Office at 2 West Main Street in Clinton, Connecticut.  Pl's. Local Rule ("L.R.") 56(a)2 Statement ("St."), ECF No. 24, ¶ 1.  The building is accessible to the public via an exterior staircase and landing on Main Street.  *Id.* ¶ 2.

On March 20, 2018, at 11:22 A.M., Plaintiff entered the Clinton Post Office using the right side of the exterior staircase.  *Id.* ¶¶ 3, 5.  On her entry into the Post Office, Plaintiff did not notice

---

[1] Where facts are undisputed, the Court cites only to Plaintiff's Local Rule 56(a)2 Statement.

an ice ball on the stairway. *Id.* ¶ 9. Plaintiff remained in the building for a few minutes before exiting and descending the same side of the exterior staircase. *Id.* ¶¶ 6–7. After she descended the staircase, Plaintiff stepped onto the landing where she allegedly slipped on an "ice ball"—which was bigger than a golf ball but smaller than a tennis ball—and fell to the ground. *Id.* ¶¶ 8, 13. Plaintiff testified she stepped on the ice ball with her right foot, landing on both sets of hands and knees, and later rolling onto her back. *Id.* ¶ 11. The ball was a discrete chunk of ice by itself on the landing, which was otherwise not covered in ice. *Id.* ¶ 15. It was only after falling that Plaintiff noticed the hazard. *Id.* ¶ 10. After standing up, Plaintiff kicked the ice ball away. *Id.* ¶ 12.

Plaintiff then reentered the Clinton Post Office to inform staff of her fall and the potential ice hazard. *Id.* ¶ 16. The employees photographed the area Plaintiff claimed to have fallen. *Id.* ¶ 17. The employees did not see any ice, and the weather conditions were bright and dry, and it was not raining or snowing. *Id.* ¶¶ 18, 22.

On the day that Plaintiff fell, Artur Gibinski was the custodian in charge of day-to-day maintenance, including clearing the front entrance to the Post Office. *Id.* ¶¶ 25–26. At his deposition, Gibinski testified that, as part of his routine, at the beginning of his shift, he would walk around the Post Office and check for any hazards—like ice and snow—at the entrances and exits of the building, including the exterior staircase and landing. *Id.* ¶ 30. He further testified that, if there was any snow or ice, he would remove the hazards or treat them with salt. *Id.* ¶ 31. On March 20, 2018, Gibinski's shift began at approximately 9:17 A.M, *id.* ¶ 29, and he testified that he did not notice any ice on the landing or front steps, *id.* ¶ 32.[2] Gibinski did not record his

---

[2] Plaintiff admits Gibinski testified he did not see any ice, but notes that Gibinski testified he was "not sure" whether he saw snow. His full answer is as follows: "I don't remember. I think it's -- that day, it's everything dry. You

daily tasks, such as clearing ice and snow, in any type of log book.  Pl.'s L.R. 56(a)2 St. of Add'l Material Facts, ECF No. 24 at 16, ¶ 5.

In addition to Gibinski's cleaning duties, the Postal Service also hired a third party—Shoreline Landscape Company—to remove snow from the premises.  Pl.'s L.R. 56(a)2 St. ¶ 26. Prior to Plaintiff's alleged injury on March 20, 2018, the last time Shoreline had removed snow and ice from the Clinton Post Office was on March 12, 2018.  *Id.* ¶ 27.  Plaintiff's meteorology expert states that a snowstorm took place on March 13, 2018, about a week before Plaintiff's fall. ECF No. 24-2 at 3.

On the day of the incident, Victoria Bernardo was Postmaster and Sheldon Potesak was the Supervisor at the Clinton Post Office.  Pl.'s L.R. 56(a)2 St. ¶¶ 23–24.  Plaintiff admits that neither Bernardo nor Potesak was aware of any ice or snow in the landing or front steps prior to Plaintiff's alleged fall.  *Id.* ¶ 32.  Bernardo, Potesak, and Gibinski all testified that no one had told them of the presence of any ice or snow.  *Id.* ¶ 33.  Plaintiff admits that none of Bernardo, Potesak, or Gibinski had ever observed or heard of anyone falling on snow or ice in the area leading to the front of the post office.  *Id.* ¶ 34.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the

---

know, no snow, no ice.  It's a long time ago.  I am not sure."  ECF No. 21-4 at 22:4–6.

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation

and internal quotation marks omitted).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    DISCUSSION

The Court holds that there is no genuine issue of material fact concerning whether Defendant was on notice of the ice ball that allegedly caused Plaintiff's fall.  Therefore, it grants Defendants' motion for summary judgment.

### A.    Federal Tort Claims Act

Generally, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . ."  *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).  In 1946, Congress gave such consent when it passed the FTCA, "constituting a limited waiver by the United States of its sovereign immunity and allowing for a tort suit against the United States under specified circumstances."  *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) (cleaned up).  "By waiving sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred,' the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees."  *Liranzo*, 690 F.3d at 86 (quoting 28 U.S.C. § 1346(b)(1)) (citations omitted).  "[T]he Act requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'"  *United States v. Olson*, 546 U.S. 43, 46 (2005) (quoting *Indian Towing Co. v. United States*, 250 U.S. 61, 64 (1955)).

B.  <u>Premises Liability</u>

Under Connecticut law, "[a] business owner owes its invitees a duty to 'keep its premises in a reasonably safe condition.'"  *DiPietro v. Farmington Sports Arena, LLC*, 306 Conn. 107, 116 (2012) (quoting *Baptiste v. Better Val-U Supermarket, Inc.*, 262 Conn. 135, 140 (2002)).  To prove a business owner was negligent in this duty, a plaintiff must show:  "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the defendant should, in the exercise of reasonable care, have discovered it in time to remedy it."  *Martin v. Stop & Shop Supermarket Cos., Inc.*, 70 Conn. App. 250, 251 (2002) (cleaned up).

As Defendant's only argument in support of summary judgment is that it lacked appropriate notice of the allegedly defective condition of the property, the Court will focus on this issue.  "For a plaintiff to recover for the breach of a duty owed to him as a business invitee, it is incumbent upon him to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused his injury or constructive notice of it."  *DiPietro*, 306 Conn. at 116 (cleaned up).  And, "[t]o defeat a motion for summary judgment in a case based on allegedly defective conditions, the plaintiff has the burden of offering evidence from which a jury reasonably could conclude that the defendant had notice of the condition and failed to take reasonable steps to remedy the condition after such notice."  *Id.* at 117.  Whether actual or constructive, notice must be "of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it."  *Id.* Further, as courts in this district have recognized, "relevant case law in Connecticut places a heavy burden on a slip and fall plaintiff to demonstrate that a defendant had notice of the specific defect that led to the

accident." *Knox v. United States*, No. 3:12-CV-01741 (SALM), 2016 WL 4724558, at *4 (D. Conn. Sept. 9, 2016) (cleaned up); *see also Taylor v Kohl's, Inc.*, No. 3:21-CV-1733 (SRU), 2023 WL 5276392, at *6 (D. Conn. Aug. 16, 2023) (citing *Knox*).

Plaintiff concedes that Defendant did not have actual notice of the ice ball, Pl. Mem. at 5, and, thus, the only dispute is whether Defendant had constructive notice. A business owner has "constructive notice of a dangerous condition when, had they exercised reasonable care, they would have discovered the condition." *DiPietro*, 306 Conn. at 117–18. To demonstrate that a defendant had constructive notice of a defective condition, the plaintiff must "establish that the defect had been there a sufficient length of time and was of such a dangerous character that the defendant by the exercise of reasonable care could and should have discovered and remedied it." *Lombardi v. Town of E. Haven*, 126 Conn. App. 563, 575 (2011). The plaintiff "must adduce some evidence, either direct or circumstantial, that establishes the length of time the defect was present." *Navarro v. Kohl's Dept. Stores, Inc.*, No. 05-CV-843 (DJS), 2007 WL 735787, at *4 (D. Conn. Mar. 8, 2007) (citing *Gulycz v. Stop and Shop Cos., Inc.*, 29 Conn. App. 519, 522 (1992)). "Although circumstantial evidence can establish constructive notice," if a plaintiff asks the court to make an inference based on such circumstantial evidence, the "inference must have some definite basis in the facts, and the conclusion based on it must not be the result of speculation and conjecture." *Gulycz*, 29 Conn. App. at 522 (citations omitted). If the plaintiff can demonstrate that the hazard existed for some period of time, "[t]he finder of fact is then left to determine whether the length of time is sufficient enough" to find the defendant liable. *Navarro*, 2007 WL 735787, at *4. Thus, to survive a motion for summary judgment, Plaintiff must provide at least some evidence from which it could be inferred that the particular ice ball existed for a period of

time, such that a finder of fact could then determine whether Defendant should have discovered and remedied it.  *See Knox*, 2016 WL 4724558, at \*5.

Plaintiff marshals three theories in favor of constructive notice, none of which evince a genuine dispute of material fact over whether a larger than golf-ball-sized ice ball existed for any period of time.

First, Plaintiff argues that there was no known inspection of the area.  Pl. Mem. At 5.  But whether an inspection occurred, absent any other evidence suggesting existence of the ice ball, does not itself allow a reasonable jury to infer that the ice ball existed for a sufficient period of time such that Defendant should have addressed it.

Second, Plaintiff argues that because a snowstorm occurred a week before her fall, on March 13, 2018, the ice ball could have resulted from the storm.  *Id.* at 6.  Plaintiff points to no direct evidence that the storm created the ice ball.  Rather, Plaintiff urges the Court to infer the genesis of the ice ball from the wintry conditions, which involved freezing and refreezing, and from a pile of snow adjacent to the landing area where Plaintiff fell.  However, the Court cannot "infer that [a] defect had existed for any length of time" where no evidence "establish[es] a basis for such an inference."  *Gulycz*, 29 Conn. App. at 522.  A week-old snowstorm and a pile of snow adjacent to where Plaintiff fell does not provide the sufficient evidence for a reasonable jury to infer that the particular ice ball existed for a period of time.  Indeed, Plaintiff's own expert opines that, at the time in question, the temperature was above freezing (36 degrees), and that, although "patches of snow and/or ice" might have remained from precipitation that fell at least a week earlier, "[m]ost untreated, undisturbed surfaces . . . were likely snow-free at this time."  ECF No. 24-2 at 3.  From this evidence, no reasonable jury could infer that the ice ball existed for a period

of time to allow Defendant to have discovered it.

Finally, Plaintiff theorizes that a leaky gutter "above the area where the plaintiff fell" made the ice ball. Pl. Mem. At 7. There is no direct evidence that the leaky gutter created the ice ball. Instead, Plaintiff infers that gutter-water "could have" frozen into the ice ball on which Plaintiff allegedly tripped and fell. *Id.* But this theory contradicts relevant state law, which requires that the defendant have notice "of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it." *DiPietro*, 306 Conn. at 116. Even if the condition of the leaking gutter were sufficient, however, Plaintiff points to no evidence that the gutter was actually leaking on March 20, 2018, much less that it was leaking in such a manner that water trickling from it could have rapidly reconstituted into a larger-than-a-golf-ball-sized chunk of ice in above-freezing temperature.

Ultimately, Plaintiff can only point to the fact that Plaintiff slipped and fell as evidence that the ice ball existed for long enough that Defendant should have encountered it. But a fall alone does not satisfy Plaintiff's burden on a motion for summary judgment. *E.g.*, *Knox*, 2016 WL 4724558 at *5–6; *Navarro*, 2007 WL 735787, at *5.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**SO ORDERED** at Hartford, Connecticut this 25th day of August, 2023.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE